**SECOND DIVISION**
**BARNES, P. J.,**
**MCFADDEN and MCMILLIAN , JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)
http://www.gaappeals.us/rules/

March 25, 2013

# In the Court of Appeals of Georgia

A12A2261, A12A2262, A12A2341. LACY v. LACY (three cases).

McFADDEN, Judge.

These three appeals, which we have consolidated for review, arise out of a custody dispute in which there has not yet been a final hearing. The rulings on appeal were by three different judges of the Superior Court of Morgan County. The dispute is between James Lacy (the father) and Emily Lacy (the mother), who are in the midst of divorce proceedings. Judge Hulane E. George of the Morgan Superior Court conducted a two-day hearing in late April, 2012 and then issued a temporary order giving the parties joint legal custody and the mother primary physical custody of their three minor children. On May 4, 2012 the father filed an emergency motion for change in custody.

In Case No. A12A2261, the father appeals from an order in which Judge John Lee Parrott denied his emergency motion for a change in custody, enjoined the father from contact with the children until further review by Judge George, enjoined the parents from directly contacting each other, and ordered the father to pay the mother's attorney fees. In Case No. A12A2262, the father appeals from an order in which Chief Judge William A. Prior, Jr. denied the father's motion to vacate or for new trial on the emergency change-in-custody motion, denied the father's motion to recuse all the superior court judges in the Ocmulgee Circuit, voluntarily recused himself, and directed that all further motions be filed with Judge George. And in Case No. A12A2341, the father appeals from an order in which Judge James L. Cline, Jr. continued the injunction barring the father from contact with the children, extended that bar to include social networking websites, and enjoined both parents from engaging in certain behavior on social networking websites.

As detailed below, we find as follows. In Case No. A12A2261, we affirm in part and vacate in part. We find that the father has not shown that Judge Parrott was required to recuse himself sua sponte or that he abused his discretion in denying the father's motion for emergency change-in-custody and temporarily restricting the father's contact with the children; accordingly we affirm those parts of Judge

Parrott's order. We find, however, that the order fails to specify the statutory basis for the attorney fee award and we vacate that portion of the order and remand Case No. A12A2261 to the trial court for further proceedings.

In Case No. A12A2262, we affirm Chief Judge Prior's order in its entirety, finding that he was not disqualified from entering the order, that he was correct in denying the father's motion to recuse as untimely and lacking the necessary supporting affidavit, and that the father has not shown he was entitled to a hearing before the judge entered that order.

In Case No. A12A2341, we affirm Judge Cline's order in its entirety, finding that he was not required to recuse himself sua sponte and that he was authorized to impose the restrictions on internet behavior contained in that order.

1. *Facts and procedural posture.*

The father filed a complaint for divorce in March 2012. Judge Hulane E. George of the Morgan County Superior Court conducted a hearing on April 24 and 30, 2012, and then issued a temporary order (signed on May 3, 2012, nunc pro tunc to April 30, 2012, and filed on May 9, 2012) giving the parties joint legal custody and the mother primary physical custody of the children.

3

On May 4, 2012, the father filed a motion for emergency hearing in which he sought a change in custody on the ground that, two days earlier, the mother had driven under the influence of alcohol with one of the children in the car. Judge John Lee Parrott of the Morgan County Superior Court conducted the emergency hearing. At that hearing, evidence was presented that the father and a law enforcement officer smelled alcohol on the mother's breath shortly after she had driven her car with one of the children inside. No other evidence was presented, however, regarding whether the mother was intoxicated. The law enforcement officer testified that he did not perform any field sobriety tests or other tests on the mother, and he testified that her demeanor was calm and that she showed no signs of intoxication other than the smell of alcohol on her breath. Judge Parrott held the evidence was insufficient to support the father's emergency motion for change in custody, and he denied the motion in a May 9, 2012, order.

Judge Parrott also held in the May 9 order that the father had admitted having "negative conversations and actions with the children," and he enjoined the father from any contact with the children until further ruling by Judge George (to whom the divorce action was assigned). He also enjoined each party from contacting the other,

4

except through their attorneys, and he ordered the father to pay the mother's attorney fees.

Ten days after ruling on the emergency motion, Judge Parrott resigned his position as a judge. On May 24, 2012, the father filed a motion to recuse all superior court judges in the Ocmulgee Circuit, on the ground that Chief Judge William A. Prior, Jr. was related to the mother and children and that Chief Judge Prior's son, Robert Prior, was a witness in the case. (Robert Prior is married to the mother's aunt and had submitted an affidavit attesting to the mother's character and parenting abilities.) Also on May 24, the father moved to vacate or for a new trial on his emergency motion. The next day, the mother petitioned for contempt, alleging that the father had failed to pay child support required under the April 30 temporary order or the attorney fees required under the May 9 order. It appears from the record that Judge George was not available to consider these motions.

On May 31, 2012, Chief Judge Prior issued an order in which he ruled as follows. First, he denied the father's motion to recuse the judges of the Ocmulgee Circuit on the grounds that the motion was untimely and that it failed to contain a supporting affidavit as required by the Uniform Superior Court Rules. He then voluntarily recused himself from the case because his son was a witness. Finally, he

5

denied the father's motion for new trial and directed that "any further motions of any type should be filed with Judge Hulane E. George, who initially heard this case and who will make further decisions in regard to this case."

The father sought a certificate of immediate review of the trial court's May 31 order, which the trial court denied. On June 7, the father filed a notice of appeal from the May 9 order. On June 18, he filed a notice of appeal from the May 31 order.

Subsequently, Judge James L. Cline, Jr. of the Superior Court of Morgan County entered an order on the mother's contempt petition. The order was filed on July 5, 2012, and was dated June 28, 2012, nunc pro tunc to June 13, 2012. Among other things, Judge Cline enjoined the father from violating the May 9 order's prohibition against contact with the children, extended that prohibition to contact with the children through social networking websites, and enjoined the parties from posting statements about each other or the case on social networking websites. The father filed a notice of appeal from this order on July 11, 2012.

2. *Contents of the father's briefs.*

As an initial matter, we note that the father's briefs are rife with discourteous and disparaging comments regarding the Ocmulgee Circuit judiciary in general and Judge Parrott and Chief Judge Prior in particular. The sources of the father's criticism

6

appear in large part to be Judge Parrott's subsequent resignation (which the father has not shown to have any relevance to or connection with the divorce proceedings underlying these appeals) and Chief Judge Prior's alleged relationship with the mother and children (a relationship which, as discussed below, Georgia law does not recognize). This Court's rules forbid the disparaging personal remarks about the judges that the father has made in his briefs. See Ct. App. R. 10.

While we have not sanctioned the father for this behavior, but see Ct. App. R. 7, we take the opportunity to comment that the father's failure to present his arguments in compliance with this Court's rules has done nothing to advance his cause and has hindered our resolution of these appeals.

3. *Appellate jurisdiction.*

The mother has moved to dismiss all three appeals and has sought sanctions for frivolous appeal on the ground that this Court lacks appellate jurisdiction. This Court, rather than our Supreme Court, has jurisdiction because the orders on appeal were entered in a pending divorce action in which no final judgment of divorce has issued, see *Egeland v. Egeland*, 279 Ga. 565 (619 SE2d 596) (2005) (where no final judgment of divorce has issued, appeal seeking review of order awarding child custody in pending divorce action does not invoke subject matter jurisdiction of

7

Supreme Court of Georgia). Although the orders on appeal are interlocutory, they are now subject to direct appeal under OCGA § 5-6-34 (a) (11). See generally *Collins v. Davis*, 318 Ga. App. 265, 268-269 & n. 17 (1) (733 SE2d 798) (2012) (holding that clear and unambiguous language of OCGA § 5-6-34 (a) (11) authorizes direct appeal of any order in proceeding in which child's legal custody, physical custody or visitation is an issue, and noting that it is for legislature to narrow scope of this right of direct appeal). Accordingly, we deny the mother's motions to dismiss and motions for sanctions in all three appeals.

*Case No. A12A2261*

In Case No. A12A2261, the father appeals from the May 9, 2012, order in which Judge Parrott denied the father's emergency change-in-custody motion, enjoined the father from contact with the children, and required the father to pay the mother's attorney fees. The father argues that Judge Parrott should have recused himself, that he abused his discretion by failing to consider the children's best interests, that he improperly based the ruling on evidence not presented in court, and that he had no basis to suspend visitation or award attorney fees. We find no merit in any of these arguments.

4. *Recusal.*

8

The father never moved for Judge Parrott's recusal. Nevertheless, he argues that the judge was obligated to recuse himself sua sponte because he had a personal bias or prejudice toward the mother and because he had personal knowledge of the facts pertinent to the emergency change-in-custody motion. We disagree.

"There is no duty for a trial judge to sua sponte recuse himself absent a violation of a specific standard of OCGA § 15-1-8 or Canon 3 (E) (1) (a) through (c) of the Code of Judicial Conduct, which is not waived by a party after disclosure." (Citation and punctuation omitted.) *Hargrove v. State*, 299 Ga. App. 27, 31 (2) (681 SE2d 707) (2009). Here, the father bases his claim that Judge Parrott should have recused himself on Canon 3 (E) (1) (a), which pertinently provides that judges shall disqualify themselves in any proceeding where their impartiality might reasonably be questioned, including when the judge has personal knowledge of disputed evidentiary facts concerning the proceeding. In construing Canon 3, we have

> interpreted the phrase "impartiality might reasonably be questioned" as meaning the existence of a reasonable perception of lack of impartiality by the judge, held by a fair minded and impartial person based upon objective fact or reasonable inference; it is not based upon the perception of either interested parties or their lawyer-advocates. A trial judge's failure to sua sponte recuse [her]self will warrant reversal only where the conduct or remark of the judge constitutes an egregious

9

> violation of a specific ethical standard, and it must support the inescapable conclusion that a reasonable person would consider the judge to harbor a bias that affects his ability to be impartial.

(Citations and punctuation omitted.) *Lemming v. State*, 292 Ga. App. 138, 141 (1) (663 SE2d 375) (2008).

In support of his argument that Judge Parrott was required to recuse under Canon 3, the father points to a photocopy of a comment on his Facebook page, purportedly made by the mother several weeks after the hearing occurred, in which she boasted: "[J]udge [P]arrott and my dad ha[d] a meeting the week before our case and guess what you lost your kids." Even if this is competent evidence that Judge Parrott met with the mother's father at some time before the hearing, the mother's father is not a party to this case, and the Facebook comment does not show, as the father asserts, that Judge Parrott gleaned any personal knowledge of the facts involved in this case from a meeting between the two. The comment provides no information at all about the circumstances of the meeting or what, if anything, was discussed. Although, in the comment, the mother suggested that there was a connection between the meeting and the outcome of the hearing, neither her perception nor the perception of the father is dispositive on this issue. See *Lemming*,

292 Ga. App. at 141 (1). We cannot say that an indefinite reference to a meeting between the judge and someone not a party to the case necessarily "support[s] the inescapable conclusion that a reasonable person would consider [Judge Parrott] to [have] harbor[ed] a bias that affect[ed] his ability to be impartial." (Citations omitted.) Id.

The father also argues that Judge Parrott's conduct during the emergency hearing revealed his personal knowledge of relevant facts and his bias toward the mother and against the father.

> [The father] does not, however, demonstrate that [he] ever made a motion for recusal or a motion for mistrial on these grounds. [His] failure to do so is fatal to this argument. If [the father] was aware of a possible basis for recusal [at the emergency hearing], [he] had no right to sit back, hope for a favorable ruling . . . , and then raise the issue for the first time in [a subsequent] motion. . . .

(Citations and punctuation omitted.) *Harbin v. Roberts*, 305 Ga. App. 107, 110 (3) (699 SE2d 36) (2010). See *Works v. State*, 301 Ga. App. 108, 112 (3) (686 SE2d 863) (2009) (issues regarding the trial court's alleged bias during trial "were not preserved for appellate review because the record does not show that a motion for recusal or a

11

motion for mistrial [on those grounds] was ever made") (citation omitted). See also

*English v. State*, 290 Ga. App. 378, 381-382 (2) (659 SE2d 783) (2008).

We disagree with the father that the transcript of the hearing reveals the ominous intent that the father ascribes to the judge or gives reason to suspect that the judge was influenced by any extra-judicial knowledge. See *Cranford v. State*, 275 Ga. App. 474, 477 (3) (621 SE2d 740) (2005). As detailed below, the evidence presented at the hearing authorized Judge Parrott to rule as he did.

5. *Abuse of discretion.*

At the hearing on the emergency change-in-custody motion, Judge Parrott stated that he was limiting the evidence to that pertaining to the father's contention that the mother drove under the influence of alcohol with a child in the car (the ground for the motion), rather than reopening the evidence on other matters addressed by Judge George at the temporary hearing less than two weeks earlier. The father argues that, by doing so, the judge failed to consider the best interests of the children.

It is true that "[t]he duty of the judge in all [child custody] cases shall be to exercise discretion to look to and determine solely what is for the best interest of the child and what will best promote the child's welfare and happiness and to make his or her award accordingly." OCGA § 19-9-3 (a) (2). But we disagree with the father's

contention that Judge Parrott failed to do this. As the judge noted, the custody issue had just been litigated before Judge George. The record on appeal does not contain a transcript of that hearing, and we must assume that Judge George fully considered all of the circumstances pertinent to a best interest determination in granting the mother temporary physical custody of the children pending the divorce proceedings. See *Thompson v. Thompson*, 288 Ga. 4, 6 (2) (700 SE2d 569) (2010) ("in accordance with the presumption of regularity of court proceedings, we must assume in the absence of a transcript that there was sufficient competent evidence to support the trial court's findings") (citation and punctuation omitted). Judge Parrott was involved in the case solely to address the emergency motion for change of custody, which the father filed on the heels of Judge George's initial temporary custody ruling. Under these circumstances, we decline to find that he abused his discretion in focusing on the new circumstances that formed the basis of that emergency motion rather than rehearing evidence that had just been considered by Judge George.

Likewise, we find no abuse of discretion in Judge Parrott's conclusion that the evidence presented at the emergency hearing did not require a change in custody. Although the father alleged that the mother had driven under the influence of alcohol with a child in the car, the hearing evidence did not demonstrate that the mother was

13

impaired. The evidence showed only that witnesses smelled alcohol on the mother's breath. Georgia law is clear that the odor of alcohol on a driver's breath "shows only the presence of alcohol and does not support an inference that the driver is intoxicated and it is less safe for her to drive." (Citation omitted.) *State v. Damato*, 302 Ga. App. 181, 182 (1) (690 SE2d 478) (2010).

6. *Evidence not presented in court.*

The father argues that Judge Parrott improperly based his ruling upon unspecified information received through his alleged meeting with the mother's father and upon "other evidence not properly in the record." As discussed above, however, the mother's reference on Facebook to a meeting is not evidence that the judge obtained information relevant to the case from an extra-judicial source, much less that he based his ruling on any such external information. This is especially so given that, in ruling on the emergency motion, the judge explained (and the record shows) that the father failed to present evidence to support the ground asserted for the emergency relief.

7. *Bar on contact with the children.*

In the May 9 order, Judge Parrott ruled that

14

[b]ased on the provisions of [Judge George's] temporary order and the admissions by the [father] of his negative conversations and actions with the children, the visitation rights of the [father] with the minor children are hereby suspended and terminated unless reinstated or provided by Judge George after review of the transcript herein. The [father] shall not communicate directly or indirectly [with] the parties' children until further order of the Court, with the exception of doing so through counsel and in compliance with [the] temporary order's provisions.

The father characterizes this ruling as a finding of contempt of provisions of the temporary order, and he argues that, as such, the ruling was improper because Judge George's temporary order was not filed in court until May 9, 2012, the same day that Judge Parrott entered his order restricting the father's visitation rights.

The father cites *In the Interest of K. D.*, 272 Ga. App. 803, 806 (613 SE2d 239) (2005), for the proposition that a person "cannot have committed contempt by failing to follow an order that was not yet filed with the clerk." But *In the Interest of K. D.* concerned a juvenile court's ability to punish a person for contempt of court for wilfully disobeying an order of the court. Id. at 805-806 (citing OCGA § 15-11-5 (a)). In contrast, Judge Parrott did not punish the father for contempt of court in the May 9 order; he modified the father's visitation rights and restricted his contact with the children, pending Judge George's review of the case, based on his finding that the

15

father had engaged in "negative conversations and actions with the children." The record shows that, at the hearing, the father admitted to telling the children that if he had to pay child support he would have to sell all of his belongings and move out of state to get a job, and that as a result he would not be able to see the children. The father also admitted that, during the nine days between the conclusion of the hearing on the temporary order – at which Judge George orally ruled that the children would be in the mother's physical custody – and the hearing on the father's emergency motion, he had multiple disputes with the mother concerning the children's physical custody that escalated to a level requiring police involvement. Given this evidence, the trial court did not abuse its discretion in suspending the father's visitation and prohibiting the parents from directly contacting each other, pending review by the judge to whom the divorce proceedings had been assigned. See generally *Long v. Long*, 303 Ga. App. 215, 217-218 (2) (692 SE2d 811) (2010) (discussing broad discretion of superior court to determine matters of custody, including modifying custodial orders, during pendency of divorce action).

8. *Award of attorney fees.*

Finally, the father argues that Judge Parrott erred in awarding $1,500 in attorney fees to the mother. The judge did not state the statutory basis for the award.

16

Accordingly, the award of attorney fees is vacated and "the case is remanded to the trial court for a statement of the statutory basis for the award of attorney fees and any finding that must be made to support it." *Moon v. Moon*, 277 Ga. 375, 378 (6) (589 SE2d 76) (2003).

*A12A2262*

In Case No. A12A2262, the father appeals from Chief Judge Prior's May 31, 2012, order. Therein, the judge made several rulings: he denied the father's motion to recuse all of the judges of the Ocmulgee Circuit on the ground that the motion was untimely and not supported by an appropriate affidavit, see Ga. Unif. Super. Ct. R. 25.1, 25.2 and 25.3; he denied the father's motion to vacate Judge Parrott's May 9 order and grant a new trial on the father's emergency motion to change custody; he voluntarily recused himself from "any hearing" in the case on the ground that his son "is apparently a witness in the case"; and he directed that all further motions should be filed with Judge George, who initially had heard the case. The father argues that Chief Judge Prior could not rule on the matters addressed in the order because he was disqualified from acting in this case on account of an alleged relationship with the mother and children and on account of his voluntary recusal. He also argues that Chief Judge Prior should have held a hearing on his motion for new trial. And he

17

reiterates his argument that all of the Ocmulgee Circuit judges should be recused. We find no merit in any of these claims.

9. *Chief Judge Prior's ability to act in the case.*

a. *Disqualification due to alleged relationship between Chief Judge Prior and the mother and children.*

The father asserts that Chief Judge Prior was related to the mother and children and he argues that, for this reason, the judge was precluded from acting in the case under OCGA § 15-1-8 (a) (2), which pertinently provides that "[n]o judge or Justice of any court . . . shall . . . [p]reside, act or serve in any case or matter when such judge is related by consanguinity or affinity within the sixth degree as computed according to the civil law to any party interested in the result of the case or matter." But the record belies the father's assertion that the mother and children had a relationship with Chief Judge Prior that is recognized under Georgia law.

The record shows that Chief Judge Prior's son, Robert Prior, is married to the mother's aunt. It is true that a "husband is related to his wife's kindred by affinity in the same degree that she is related by consanguinity." (Citation omitted.) *Eaton v. Grindle*, 236 Ga. 324, 325 (223 SE2d 670) (1976). Accordingly, Robert Prior is related to the mother and the children in the case to the same degree that his wife is

18

related to them. But this rule does not affect the relationship between Robert Prior's father (Chief Judge Prior) and the kindred of Robert Prior's wife. "Marriage relates the husband to the wife's kindred, but does not relate any of his kindred to hers." (Citations and punctuation omitted). *Everett v. Culberson*, 215 Ga. 577, 585 (8) (111 SE2d 367) (1959). Accord *Edge v. Calhoun Nat. Bank*, 155 Ga. 821, 828 (118 SE 359) (1923). Simply put, Chief Judge Prior was not related under Georgia law to the kindred of his son's wife (Emily Lacy or the Lacy children) and thus was not disqualified from acting in this case under OCGA § 15-1-8 (a) (2).

b. *Voluntary recusal.*

Likewise, Chief Judge Prior's voluntary recusal does not require us to reverse the May 31 order. Chief Judge Prior made clear in the order that he was voluntarily recusing himself from "any hearing in this case" because his son "is apparently a witness in the case." "A voluntary recusal shall not be construed as either an admission or denial to any allegations which have been set out in [a recusal] motion." Ga. Unif. Super. Ct. R. 25.7. See *Moody v. State*, 256 Ga. App. 65, 67 (567 SE2d 709) (2002). And the Chief Judge's son did not appear as a witness in connection with the rulings made in the May 31 order – the denial of the father's motion to recuse all of the judges in the Ocmulgee Circuit, the denial of the father's motion for a new trial

19

on his emergency motion (given that, as discussed above, the hearing conducted by Judge Parrott on the emergency motion was limited to the issue of whether the mother had driven under the influence with a child in the car), and the instruction that all further motions be directed to Judge George, to whom the case had been assigned. See id. (affirming ruling of judge vacating transfer order, although judge also voluntarily recused himself from further proceedings; noting that facts and circumstances presented by case were insufficient to call reasonably into question judge's impartiality on issue on which he ruled).

10. *Hearing on motion for new trial.*

The father argues that Chief Judge Prior erred in not holding a hearing before denying the father's motion for new trial, in which the father challenged Judge Parrott's ruling on the emergency motion for change in temporary custody. See *PHF II Buckhead v. Dinku*, 315 Ga. App. 76, 80-81 (2) (726 SE2d 569) (2012) (holding trial court erred in denying motion for new trial without first holding hearing on motion in accordance with Ga. Unif. Super. Ct. R. 6.3). The mother responds that, despite its nomenclature, the father's motion was not in fact a "motion for new trial" and consequently the judge was not required to hold a hearing before deciding the

20

motion. See generally *Martin v. Williams*, 263 Ga. 707, 708 (1) (438 SE2d 353) (1994) ("substance, rather than nomenclature, governs pleadings") (citations omitted).

We need not resolve the issue of the nature of the father's purported motion for new trial. Even if the father should have received a hearing on that motion, the procedural posture of this case renders the motion moot, because the challenges the father raised in the motion have already made their way through the appeals process in the father's direct appeal of Judge Parrott's order in Case No. A12A2261. See *Housing Auth. of the City of Atlanta v. Geter*, 252 Ga. 196, 197 (312 SE2d 309) (1984). The propriety of Judge Parrott's order on the change-in-custody motion has been finally decided and there is nothing remaining for the trial court to deal with in connection with the father's attempt to receive a "new trial" on the change-in-custody motion. See id.

11. *Request for recusal of all Ocmulgee Circuit judges*.

In the May 31, 2012, order, Chief Judge Prior denied the father's motion to recuse all of the superior court judges in the Ocmulgee Circuit on the grounds that the motion was untimely and lacked a supporting affidavit pursuant to the Uniform Superior Court Rules. In Case No. A12A2262 the father does not set forth a claim of error regarding this ruling that is separate from his claim that Chief Judge Prior

21

lacked authority to issue the ruling. (He does, however, enumerate this ruling as error and challenge the merits of the ruling in Case No. A12A2341, which does not involve an appeal from this ruling.) But in his appellate brief, the father does assert that all of the Ocmulgee Circuit judges should be recused. "In keeping with our statutory mandates to construe the . . . Appellate Practice Act liberally so that all points raised in an appeal are considered," *Lee v. Ga. Power Co.*, 296 Ga. App. 719, 723 (5) (675 SE2d 465) (2009) (citation and punctuation omitted), we have reviewed Chief Judge Prior's determination that the father's motion to recuse was deficient, and we find no error.

First, the motion was not "timely filed" as required by Uniform Superior Court Rule 25.1. The father was required to file his motion to recuse "not later than five (5) days after [he] first learned of the alleged grounds for disqualification." Ga. Unif. Super. Ct. R. 25.1. The father based his motion to recuse upon information contained in the Robert Prior affidavit, which the mother had filed with the court and served on the father's counsel on May 8, and on Judge Parrott's order entered May 9 in the case. But he did not file the motion to recuse until May 24, 2012. Consequently, the record shows that the motion was untimely.

22

Second, the motion was not supported by "affidavit(s) which . . . fully assert the facts upon which the motion is founded," as also required by Rule 25.1. Such an affidavit cannot consist of bare conclusions and opinions but must

> clearly state the facts and reasons for the belief that bias or prejudice exists, being definite and specific as to time, place, persons and circumstances of extra-judicial conduct or statements, which demonstrate either bias in favor of any adverse party, or prejudice toward the moving party in particular, or a systematic pattern of prejudicial conduct toward persons similarly situated to the moving party, which would influence the judge and impede or prevent impartiality in that action.

Ga. Unif. Super. Ct. R. 25.2. The father, however, did not submit his own affidavit in support of the motion to recuse, and the Robert Prior affidavit merely stated that the affiant had known the mother – whom he described as his "niece" – her entire life and that he thought highly of her character and parenting abilities. The Robert Prior affidavit offered no reason to believe that all of the Ocmulgee Circuit judges harbored bias or prejudice in this case. Neither that affidavit nor the May 9 order of Judge Parrott met the requirements of an affidavit in support of the father's motion to recuse.

23

When a judge is presented with a motion to recuse, or disqualify, accompanied by an affidavit, the judge shall temporarily cease to act upon the merits of the matter and shall immediately determine the timeliness of the motion and the legal sufficiency of the affidavit, and make a determination, assuming any of the facts alleged in the affidavit to be true, whether recusal would be warranted.

Ga. Unif. Super. Ct. R. 25.3. If all three of these conditions precedent are not met, "the trial judge shall deny the motion on its face as insufficient, and there is no need for the trial judge to assign the motion to another judge to hear. It is as much the duty of a judge not to grant the motion to recuse when the motion is legally insufficient as it is to recuse when the motion is meritorious." (Citations and punctuation omitted.) *Gould v. State*, 273 Ga. App. 155, 159 (4) (614 SE2d 252) (2005).

Chief Judge Prior's decision that the motion to recuse all of the Ocmulgee Circuit judges did not meet all of the conditions precedent for a recusal motion did not require an exercise of discretion, and we review that decision de novo. See *Mayor & Aldermen of the City of Savannah v. Batson-Cook Co.*, 291 Ga. 114, 119 (1) (723 SE2d 189) (2012). We find no error in the decision, because the motion to recuse was untimely and was not accompanied by an affidavit satisfying the requirements of the Uniform Superior Court Rules. See *Gould*, 273 Ga. App. at 160 (4).

24

In Case No. A12A2341, the father appeals from the order of Judge Cline, filed on July 5, 2012, following a hearing on a contempt motion brought by the mother. He argues that Judge Cline erred in imposing what the father characterizes as a "gag order" on comments made by the parties on social networking websites concerning each other or the divorce proceedings. He also argues that Judge Cline should have recused himself and argues that "[t]he trial court erred by finding that [the father's] motion for recusal was untimely and without the required affidavit," even though Judge Cline's order made no such finding. None of the father's arguments have merit.

12. *Provision restricting behavior on social networking websites.*

Pertinent to this appeal, the July 5 order contained a provision that "restrained and enjoined [the parties] from posting matters about each other or their current litigation on Facebook or other social networking sites." The father argues that this was error because the court did not apply the "substantial likelihood of material prejudice" standard or make specific findings of facts in that regard, as the father asserts is required under *Atlanta Journal-Constitution v. State*, 266 Ga. App. 168 (596 SE2d 694) (2004). The decision in *Atlanta Journal-Constitution*, however, concerned balancing attorneys' First Amendment rights with the state's interest in fair trials

when addressing potentially prejudicial pretrial publicity. See id. at 169-171 (2). In contrast, as the mother points out, this case involves a court's authority in a divorce and child custody proceeding to "make prohibitive or mandatory orders, with or without notice or bond, and upon such terms and conditions as the court may deem just." OCGA § 9-11-65 (e).

We have not found any authority specifically addressing the issue of restricting parents' behavior on social networking websites during a divorce and child custody proceeding. But our Supreme Court has held that a trial court can require the parties in a divorce proceeding "to refrain from making derogatory remarks about the other before the children." *Maloof v. Maloof*, 231 Ga. 811, 812 (6) (204 SE2d 162) (1974). Likewise, it has upheld findings that parties in divorce proceedings were in contempt for violating orders that restrained them from behavior including telephoning the other's workplace or communicating with each other. See *Roberts v. Roberts*, 226 Ga. 203, 205-207 (2), (5) (173 SE2d 675) (1970); *Baxter v. Baxter*, 226 Ga. 129 (172 SE2d 695) (1970). The record in this case contains evidence that both the father and the mother, in discussing their divorce proceedings, made derogatory and disparaging comments about each other on Facebook. We find no error in the restriction Judge Cline placed upon the parties' behavior on social networking websites.

26

13. *Judge Cline's failure to recuse.*

The father argues that Judge Cline erred in failing to recuse himself after Chief Judge Prior denied the father's request to recuse all of the Ocmulgee Circuit judges. The record does not show, however, that the father moved for Judge Cline to recuse after Chief Judge Prior denied the motion pertaining to all of the Ocmulgee Circuit judges. And we find no ground requiring Judge Cline to recuse himself sua sponte. See *Lemming*, 292 Ga. App. at 141 (1).

14. *Ruling on the motion to recuse all of the Ocmulgee Circuit judges*.

The father argues that the "trial court" erred in finding that his motion to recuse the Ocmulgee Circuit judges was untimely and without the required affidavit. But Judge Cline's July 5 order made no such findings. Moreover, as discussed above, Chief Judge Prior did not err when he denied the motion to recuse on these grounds in the May 31 order. See Division 11, supra.

15. *Summary.*

As detailed above, the three orders that are the subject of these appeals are affirmed, except that the attorney fee award in the May 9 order (at issue in Case No. A12A2261) is vacated and that case is remanded to the trial court for a statement of

the statutory basis for the award of attorney fees and any finding that must be made to support it.

*Judgment affirmed in part, vacated in part, and remanded with direction in Case No. A12A2261. Judgment affirmed in Case No. A12A2262. Judgment affirmed in Case No. A12A2341. Barnes, P. J., and McMillian, J., concur.*