**THIRD DIVISION**
**DOYLE, P. J.,**
**MARKLE and PADGETT, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**January 30, 2026**

# In the Court of Appeals of Georgia

A25A2179. NEWSOME v. HAWKINS.

MARKLE, Judge.

Shannon Newsome, the mother of N. H., appeals from the trial court's order denying her petition for habeas corpus and allowing temporary custody of the child to remain with the child's father, Ryan Hawkins.[1] On appeal, she contends that the trial court lacked subject matter jurisdiction under the Uniform Child Custody Jurisdiction and Enforcement Act ("UCCJEA"), OCGA § 19-9-40 et seq.; Georgia

---

[1] "When a parent withholds a child from the other parent in violation of a valid child custody order, the other parent may seek to secure the return of the child by filing a habeas corpus petition in the judicial circuit where the child is allegedly being detained illegally." *Bales v. Lowery*, 299 Ga. 200, 202 (2) (787 SE2d 166) (2016); *Finch*, 372 Ga. App. at 123 (3); OCGA § 9-14-1 (b) ("Any person alleging that another person in whom for any cause he is interested is kept illegally from the custody of the applicant may seek a writ of habeas corpus to inquire into the legality of the restraint.").

was not the proper venue; she was not properly served; and she is entitled to custody.[2]

For the reasons that follow, we vacate the trial court's order and remand the case for

further proceedings.

Questions of subject matter jurisdiction under the UCCJEA are subject to de

novo review.[3] *Gorelik v. Gorelik*, 346 Ga. App. 786, 787 (815 SE2d 330) (2018);

*Delgado v. Combs*, 314 Ga. App. 419, 425-426(1) (724 SE2d 436) (2012). "When

---

[2] Although this case involves a habeas petition, we have jurisdiction. See generally, *Finch v. Walden*, 372 Ga. App. 115, 123-24(3) (903 SE2d 802) (2024); *Davis v. Taylor*, 370 Ga. App. 837, 840-41(2)(a) (898 SE2d 574) (2024). Additionally, the fact that the custody order was temporary does not preclude our jurisdiction. See *McManus v. Johnson*, 356 Ga. App. 880, n. 1 (849 SE2d 708) (2020); *Lacy v. Lacy*, 320 Ga. App. 739, 742(3) (740 SE2d 695) (2013); OCGA § 5-6-34(a)(11).

[3] We note that

[a]ppellate courts in other states have recognized that the UCCJEA might have more accurately used the term "exclusive venue" instead of "subject matter jurisdiction," because subject matter jurisdiction concerns the type of controversy, not the facts of an individual case, and normally does not arise by virtue of one court declining jurisdiction in favor of another otherwise not empowered to exercise it. Nevertheless, we, like those courts, will use the statutory language of subject-matter jurisdiction.

*Delgado*, 314 Ga. App. at 425(1), n.17 (citation modified).

considering the appeal of a child custody decision, we view the evidence in the light most favorable to the trial court's decision. And we review a trial court's custody decision for an abuse of discretion." *Longino v. Longino*, 352 Ga. App. 263 (834 SE2d 355) (2019) (citation modified).

This case has a complicated procedural history involving both the Virginia and Georgia courts and is replete with allegations of misconduct by both parents, as well as threats by the mother against the father. We set out the history only so far as is relevant to the resolution of the issues on appeal.

In 2018, while Newsome was separated from her husband, she was romantically involved with Hawkins, resulting in the birth of N. H. in 2019.[4] Several years later, while Newsome lived with the child in Virginia, she filed a complaint for determination of paternity in Georgia, where Hawkins lived. The Office of State Administrative Hearing issued a final order, confirming Hawkins's paternity.

---

[4] Newsome did not disclose that she was still married until well after this custody battle began and only did so when, as the trial court found, it appeared to be advantageous to her.

In 2023, Hawkins filed a petition for custody in Virginia, on the ground that he believed Newsome was unstable and a danger to the child.[5] Newsome responded to the petition, admitting that the Virginia court had jurisdiction over the petition and that Hawkins was the child's father. Following a hearing in August 2023, at which Newsome did not appear, the Virginia court granted Hawkins temporary sole legal and physical custody. In its order, the Virginia court confirmed that Newsome had been given notice of the hearing.

The following month, the parties sought to transfer the custody case to Georgia, once Newsome could establish residency here. In the Georgia proceedings, Newsome agreed to a consent order of legitimation in Georgia, and that the Georgia court would adopt the Virginia court's temporary custody ruling with a modification permitting her supervised visitation. After Newsome established residency in Georgia, the Virginia court acknowledged the transfer order from Georgia, and the Georgia court

---

[5] Consistent with Virginia law, Hawkins submitted proof of paternity. See Va. Code §§ 20-49.1(B)(1)-(2) (methods of establishing relationship with child includes genetic tests and written acknowledgment of parentage from both parents); 20-49.4 (evidence sufficient to establish paternity); 20-49.7 (allowing for civil actions to determine parentage); 20-49.8(B) (order establishing parentage can include support and custody determinations).

accepted the case and reaffirmed custody would remain with the father. The Georgia court also awarded Newsome supervised visitation.

Newsome then filed a habeas petition, an amended habeas petition, and emergency motion to return the child to her custody, arguing that the Virginia order was void, as that court lacked subject matter jurisdiction and Hawkins had not legitimated the child.[6] Following a series of hearings, the trial court denied the habeas petitions and emergency motion, making no changes to the temporary custody and visitation arrangement.[7] Newsome now appeals.

1. Newsome first argues that the Georgia court had no authority to issue any custody order because Virginia was the proper home state under the UCCJEA

---

[6] This argument is unavailing. Newsome has repeatedly admitted that Hawkins is the child's father, and, as noted above, under Virginia law, Hawkins submitted sufficient proof of paternity in his action for custody in that state. Va. Code §§ 20-49.1(B); 20-49.4. And, his petition for legitimation remains pending before the Georgia court. OCGA § 19-7-22; *Davis v. Taylor*, 370 Ga. App. 837, 844(3)(898 SE2d 574) (2024).

[7] Although the Georgia court at one point exercised emergency jurisdiction under OCGA § 19-9-64, the court's order does not meet that criteria. Moreover, when exercising jurisdiction under this emergency provision, and another court has already made a custody determination, the courts are required to communicate. OCGA § 19-9-64(d). As discussed below, the record does not show any such communication.

regardless of her consent to the Georgia proceedings. She further asserts that the subsequent transfer would not authorize the trial court's actions because jurisdiction must exist at the time the court renders its decision. We conclude that we must vacate the custody order.[8]

The UCCJEA provides for a uniform system of determining custody disputes. OCGA § 19-9-61(a)(1), (b). Our legislature enacted the UCCJEA to address

> problems of competing jurisdictions entering conflicting interstate child custody orders, forum shopping, and the drawn out and complex child custody legal proceedings often encountered by parties when multiple states are involved.

*Delgado*, 314 Ga. App. at 424 (citation modified). See also *Bellew v. Larese*, 288 Ga. 495, 496 (706 SE2d 78) (2011). One of its central purposes is to "[a]void jurisdictional competition and conflict with courts of other States in matters of child custody which

---

[8] Although Newsome is correct that her consent cannot grant the Georgia court subject matter jurisdiction, and that she may challenge the validity of the Virginia order, consent remains a factor in determining whether there is a more convenient forum. See *In the Interest of D. H.*, 372 Ga. App. 765, 768(2)(a) (906 SE2d 774) (2024) ("in the context of a custody matter controlled by the UCCJEA, jurisdiction to make a child custody determination is subject matter jurisdiction, and an agreement of the parties to confer jurisdiction on a court that would not otherwise have jurisdiction under the UCCJEA is ineffective." (quotation marks omitted)); OCGA § 19-9-67(b)(5).

have in the past resulted in the shifting of children from State to State with harmful effects on their well-being." UCCJEA § 101, cmt. 1 (identifying the purposes of the act as (1) avoiding jurisdictional competition, (2) promoting cooperation between courts of different states, (3) discouraging the use of the interstate system to continue custodial controversies, (4) deterring child abductions, (5) avoiding relitigation of custody decisions by other states, and (6) facilitating enforcement of decrees from other states). And, in considering cases under the UCCJEA, "[w]e construe the UCCJEA liberally so as to carry out the remedial aspects of the law." *Bowman v. Bowman*, 345 Ga. App. 380, 386(2)(b) (811 SE2d 103) (2018) (citation modified).

Under the UCCJEA, jurisdiction over the initial custody petition generally lies in the child's "home state." OCGA § 19-9-61(a)(1); *Bowman*, 345 Ga. App. at 385(2)(a). "Home state" is defined as "the state in which a child lived with a parent or a person acting as a parent for at least six consecutive months immediately before the commencement of a child custody proceeding." OCGA § 19-9-41(7). An initial custody determination refers to the first determination for custody, and it includes temporary custody orders. OCGA § 19-9-41(3), (8).

The UCCJEA also provides a procedure for cases in which the parties initiate simultaneous proceedings. See OCGA § 19-9-66. That procedures requires that, once another state has commenced custody proceedings, a Georgia court may not exercise jurisdiction unless the other state's proceeding has been terminated or stayed because Georgia is the more convenient forum. OCGA § 19-9-66(a). And, in cases involving simultaneous proceedings, the Georgia court "shall stay its proceeding and communicate with the court of the other state." OCGA § 19-9-66(b).

Here, there is no dispute that Virginia was the home state at the time Hawkins filed his petition, as that is where Newsome and the child lived for more than six months when that court made an initial determination of temporary custody.[9] See OCGA § 19-9-41(7). It is also undisputed that Georgia could not qualify as the child's home state at the time the case was transferred because the child had not lived here the requisite amount of time. Id.

Once Virginia exercised its jurisdiction, it remained the exclusive court with authority to address issues of N. H.'s custody. OCGA § 19-9-62(a); Va. Code § 20-146.13(A). Although the UCCJEA allows for termination of a home state's jurisdiction

---

[9] Virginia has adopted the UCCJEA. See Va. Code Ann. § 20-146.1 et seq.

8

where the child and parents are no longer living there or where the court of another state would be more convenient,[10] see Va. Code. §§ 20-146.13(A); 20-146.18(A); OCGA § 19-9-62(a)(2), where there are simultaneous proceedings, the UCCJEA requires the courts to communicate with each other. And, when considering whether another state is a more convenient forum, the UCCJEA requires the court to consider certain evidence, and make specific findings in order to terminate the home state's jurisdiction. See *Alden v. Yarborough*, 360 Ga. App. 850, 852-54(1) (862 SE2d 148) (2021) ("where the trial court's decision to relinquish jurisdiction is based on its communications with a court of another state, it commits reversible error by failing to inform the parties of those communications and by failing to allow the parties to present facts and arguments relating to the record of those communications"); *Odion v Odion*, 325 Ga. App. 733, 735-36(1)(e) (754 SE2d 778) (2014); *Murillo v. Murillo*, 300 Ga. App. 61, 63-64 (684 SE2d 126) (2009); *Prizzia v. Prizzia*, 58 Va. App. 137, 152-53(II)(A)(2) (707 SE2d 461) (2011); OCGA §§ 19-9-66; 19-9-67; Va. Code § 20-146.13.

---

[10] Whether the court is an inconvenient forum is an issue that may be raised by a party, the court, or at the request of another court. OCGA § 19-9-67(a).

Here, although the Virginia court noted that none of the parties lived in that state any longer, nothing in the record shows that the courts engaged in any communication, nor do either of the orders contain the necessary factual findings to comply with the requirements to terminate jurisdiction in favor of a more convenient forum. Instead, the Virginia court's order shows that it relied solely on the Georgia court's earlier order to transfer the case, and the Georgia court based its decision primarily on the parties' agreement. See OCGA §§ 19-9-49(b); 19-9-66(b); 19-9-67(b). Under the UCCJEA, the Virginia and Georgia courts must communicate, and the Georgia court should consider the factors set out in OCGA § 19-9-67(b) and set out the basis for its decision in determining whether to accept or decline jurisdiction. *Murillo*, 300 Ga. App. at 64. See also *Wang v. Liu*, 292 Ga. 568, 570(1) (740 SE2d 136) (2013) (in considering dismissal of action under forum nonconveniens statute, best practice is for trial court to make explicit findings to enable appellate review). Cf. *Sprenkle v. Sprenkle*, 363 Ga. App. 703, 707-08(2) (872 SE2d 472) (2022) (noting that under OCGA §§ 19-9-66 and 19-9-67, the courts of the two states involved could have conferred about which state was the more convenient forum); *Steen-Jorgensen v. Huff*, 352 Ga. App. 727, 731-32(1) (835 SE2d 707) (2019) (considering similar statute and

explaining that trial court's order should explain basis for its reasoning and consideration of the relevant factors to enable appellate review). As a result, we must vacate the custody order, and remand the case for further proceedings consistent with this opinion. *Murillo*, 300 Ga. App. at 64; *Lucado v. Coherd*, 320 Ga. App. 241, 243 (739 SE2d 749) (2013).

2. In light of this conclusion, it is premature to address Newsome's remaining enumerations of error. *Alden*, 360 Ga. App. at 854(2); *Trident Wholesale v. Brown*, 370 Ga. App. 505, 512(3) (897 SE2d 610) (2024).

*Judgment vacated and case remanded with direction. Doyle, P. J., and Padgett, J., concur.*