**SECOND DIVISION
BARNES, P. J.,
ADAMS and MCFADDEN, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)
http://www.gaappeals.us/rules/

**July 12, 2012**

# In the Court of Appeals of Georgia

A12A0609. PHILLIPS v. PHILLIPS.

BARNES, Presiding Judge.

Misty Gail Phillips filed for divorce from Brandon Kyle Phillips on March 2, 2011 in Cobb County. At the time the couple married, June 3, 2006, Ms. Phillips had a young son, K. B. Mr. Phillips is neither the biological nor the legal father or K. B. During their marriage, the couple had a daughter, K. P. Following a March 22, 2011 temporary hearing, the trial court granted the couple joint physical and legal custody of their daughter and granted the mother primary physical custody of K. B. and the father joint legal custody and visitation with K. B., The trial court's temporary order stipulated that the children "not be around" Timothy White, Ms. Phillips' boyfriend. On April 25, 2011, Mr. Phillips filed a petition for contempt and for immediate change of custody, alleging that the mother was still living with White, that the

children had been exposed to domestic violence in the home, and that the children were concerned for their safety.

At a May 17, 2011 hearing on the petition, the maternal grandmother, Karen Williams Haynes, testified that the Department of Family and Children Services [DFACS] had become involved in the situation because K. B. had bruises on his face. She testified that K. B. was staying with her, and that DFACS would not "open up a DFACS case" if Mr. Phillips had custody of K. B. After hearing all of the testimony, the trial court issued an order on the petition granting primary physical custody of K. P. to the father, and, over the objection of the mother, continuing the his joint legal custody and visitation rights with K. B. The trial court also appointed a guardian ad litem, and set another hearing for June 3, 2011.

After the June 3 hearing, the trial court entered a second temporary order which maintained physical custody of K. P. with the father, and continued Mr. Phillips' custodial and visitation rights with K. B., the mother's minor son. The mother continued to object to the court's exercise of jurisdiction over K. B. Another hearing was held on June 17, 2011, at which the guardian ad litem testified that it was in the children's best interest for Mr. Phillips to have primary custody, and that K. B. was "terrified to return home to his mother while she's living with . . . White." She also

2

testified that Fulton County DFACS had an open deprivation case on K. B. and had gotten a shelter care order for him but "would wait and allow this Court to make decisions before acting on anything." In considering the evidence at the hearing, the trial court stated that it would be

> totally unacceptable– a totally untenable position for some Juvenile Court in Fulton County to say, no, I'm going to give [K. B.] to . . . [a stranger], who has applied to be a foster parent. And [the stranger] . . . seems like he'd be a good fit with [K. B.]. And for the Juvenile Court . . . to place this child with [a stranger] would just be laughable. I mean it would be horrific; it would be just a tragedy.

The trial court entered a third temporary order awarding "sole legal and physical custody "of K. P. and K. B. to Mr. Phillips. The order also provided visitation to Haynes, the intervenor and maternal grandmother.[1]

The court found that there was

> clear and convincing evidence that if K. B. was in the custody of his mother, he would be reared under immoral, obscene, and indecent influences which would degrade his moral character and devote him to a vicious life and that therefore, it is in K. B.'s best interests that the temporary custody and control of [K. B.] be awarded to [Mr. Phillips.]

---

[1] The trial court entered an order granting Haynes' motion to intervene on June 17, 2011.

3

The mother filed an application for discretionary appeal in the Supreme Court of Georgia, and that Court transferred the application to this Court after finding that its jurisdiction was not invoked. As appeals from "all judgments or orders in child custody cases, including, but not limited to, awarding or refusing to change child custody" are directly appealable pursuant to OCGA § 5-6-34 (a) (11), we granted the appellant's interlocutory application, and this appeal ensued. On appeal , the mother contends that the trial court erred in granting sole legal and physical custody of K. B. to Mr. Phillips, that the trial court erred in finding that it had subject matter and personal jurisdiction over K. B, and erred in granting Haynes's request to intervene.

1. As a threshold matter, appellant, the mother, has not complied with this court's requirement of specific citation to the record. Court of Appeals Rule 25 (a) (1). As we have often stated, it is not our function to cull the record on behalf of a party." *Drew v. Istar Financial*, 291 Ga. App. 323 (661 SE2d 686) (2008).

2. We will affirm a trial court's decision on a petition to change custody if there is any reasonable evidence in the record to support it. See *Mitcham v. Spry*, 300 Ga. App. 386 (685 SE2d 374) (2009). "When reviewing a child custody decision, this

[C]ourt views the evidence presented in the light most favorable to upholding the trial court's order." (Footnote omitted.) Id.

Only the mother of a child born out of wedlock is entitled to her custody, unless the father legitimates her as provided in Code Section 19-7-22. Otherwise, the mother may exercise all parental power over the child. (Punctuation omitted.) *Veal v. Veal,* 281 Ga. 128 (636 SE2d 527) (2006). Moreover,

> before the law can allow a step-parent to seek custody of a child against the wishes of a biological parent, formal legal procedures and concrete legal standards are necessary to safeguard all of the parties' interests and to impart the seriousness of the obligations being undertaken. The fact that a biological mother has subsequently married a man, even one who has been a laudable stepfather to her child, cannot, under the law, threaten the mother's custodial rights. The means by which the husband in this case should have established legal paternal ties with [K. B.] was through the formal adoption process. That process is designed to protect the interests of all parties involved, especially the children who are, after all, entirely innocent in these situations.

Id. at 129-130. Likewise, although the trial court in this case went to great efforts in making a factual determination that it was in the best interest of K. B. for Mr. Phillips to have custody,

the former [step]father is not given the same status as a "grandparent, great-grandparent, aunt, uncle, great aunt, great uncle, sibling, or adoptive parent" under OCGA § 19-7-1 (b.1), [and] the juvenile court is left with no discretion to determine which placement would be in the child's best interest.

*In the Interest of C. L.*, 284 Ga. App. 674, 676 (1) (644 SE2d 530) (2007). As we have noted,

[o]ur law provides no clear process for resolving this issue, leaving some courts and parties straining to fit the new reality into the old legal structure. This deficiency results in tragedy for some and uncertainty for all. Only the legislature can fix this problem, by addressing how a nonbiological father may seek custody or at least visitation of a child he has raised and to whom he has bonded.

Id. at 677.

According, the trial court's order granting sole physical and temporary custody of K. B. to Mr. Phillips is reversed, and the case remanded for the trial court to award custody to the mother.

3. Appellant's remaining enumerations are moot.

*Judgment reversed. Adams and McFadden, JJ., concur.*

6