**FIRST DIVISION
BARNES, P. J.,
GOBEIL and PIPKIN, JJ.**

**NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules**

***DEADLINES ARE NO LONGER TOLLED IN THIS
COURT. ALL FILINGS MUST BE SUBMITTED WITHIN
THE TIMES SET BY OUR COURT RULES.***

**March 15, 2021**

# In the Court of Appeals of Georgia

A20A1716. ORTEGA v. TEMPLE et al.

BARNES, Presiding Judge.

Prosper Ortega, the noncustodial biological mother of A. U., filed a petition to regain custody of her child. Ortega sought relief from a final consent order which had placed physical and legal custody of A. U. with Ortega's godparents, Leigh and Anita Temple. Subsequently, the trial court entered a temporary order addressing, among other things, issues regarding the child's care and custody, which it later substituted with an amended order, and also holding that the terms and provisions of the final consent order would remain in full force and effect as to A. U.'s custody with the Temples (the "temporary order"). The trial court also entered a separate order addressing the standard that would govern the final hearing in which it concluded that the Temples now had the prima facie right to custody as against Ortega, who had lost

the right to custody; and that Ortega could regain custody only upon showing by clear and convincing evidence that she was currently a fit parent and that it was in the child's best interest that custody be changed (the "legal standard order"). The court held that the standard of *Durden v. Barron*, 249 Ga. 686 (290 SE2d 923) (1982) – under which the noncustodial biological parent has the burden to show by clear and convincing evidence that she is a fit parent and that it is in the child's best interest that custody be changed – would apply in the final hearing. We granted Ortega's application for interlocutory review of the orders, and this appeal ensued. For the reasons that follow, we reverse the trial court's judgment in the legal standing order, vacate the temporary custody order, and remand the case to the trial court for consideration of Ortega's petition under the proper legal standard and further proceedings not inconsistent with this opinion.

When reviewing a child-custody decision, this Court views the evidence presented in the light most favorable to upholding the trial court's order. *Mitcham v. Spry*, 300 Ga. App. 386, 386 (685 SE2d 374) (2009). However, the question of whether the trial court applied the correct legal standard is one of law, which this Court reviews de novo. See *Bonus Stores v. Hensley*, 309 Ga. App. 129, 133 (2) (710 SE2d 201) (2011).

2

The relevant facts demonstrate that in 2016, seven days after she gave birth to A. U., the child's biological father severely beat Ortega, which resulted in substantial and serious injuries to Ortega. The father was incarcerated as a result of the attack, and remained incarcerated at the time the underlying petition was filed.

Because Ortega could not care for her newborn son, the maternal grandmother, filed a petition for custody of the child. On January 20, 2017, following a hearing, the trial court issued a "final custody order" placing custody of A. U. with the grandmother.[1] The order indicated that Ortega and the father had agreed to the terms regarding custody and visitation as incorporated in the order. Those terms included that:

> [The grandmother] is granted sole legal and physical custody of the minor child [A. U.], with the following provisos:
>
> a. Petitioner [the grandmother] shall consult and discuss any major decisions for the minor child with Respondent [Ortega] before making such decisions; and,

---

[1] The paternal grandparents were permitted to intervene in the action and were granted visitation as agreed to by the parties, but "at a minimum" of no less that four hours every other weekend.

b. Visitation between [Ortega] and the minor child shall be as agreed upon by her and [the grandmother], with the understanding that such agreement shall not be unreasonably withheld.

The court ordered that the father have no visitation with the child, and required him to pay monthly child support to the grandmother. The court did not require Ortega to pay child support, "as she [was] in the home with [the grandmother] and assisting with the child's care."

Subsequently, the Temples filed a complaint to modify custody against Ortega, the grandmother, and the father. On September 29, 2017, the trial court issued a "Final Consent Order" (the "consent order"). The consent order provided that the parties had "reached a full and final settlement of all issues arising from [the Temples'] Complaint to Modify Custody," and consented to the entry of the order. The trial court ruled that "[the Temples] shall have sole legal and physical custody of the minor child" and that "[v]isitation between [Ortega] and the minor child shall be as agreed upon by [Ortega] and [the Temples]," with the understanding that visitation "shall not be unreasonably withheld[.]" The trial court ruled the same regarding visitation between the grandmother and the child. It found that Ortega had no income and ordered the father alone to pay child support, payable to the Temples.

4

The trial court stated that it had deviated from the child support guidelines and would not require Ortega to pay child support because she was "disabled" and had "disabilities."

In December 2018, seeking to regain custody of A. U., Ortega filed a petition for temporary and permanent modification of custody. In the petition, Ortega claimed that: (1) due to material changes in circumstances since the entry of the consent order – specifically, Ortega's significant strides in her recovery from her traumatic domestic abuse experience and her substance addiction issues – it was now in A. U.'s best interest that Ortega be granted sole custody and that the child be reunited with her, his biological mother; and (2) the Temples had (a) tried to alienate A. U. from Ortega with no concern for the irreparable damage they were doing to the child, and (b) threatened the child's welfare by abusing alcohol, using improper language in the child's presence, and neglecting the child's hygiene. In opposing the petition, the Temples responded that they were bonded with the child, and it would be detrimental for the child to be removed from their home; and that due to her mental instability, Ortega was not capable of providing a safe and stable home for the child.

At a subsequent December 2019 "compliance" hearing related to the petition at which several witnesses testified,[2] the parties first contested the standard to be applied by the trial court in ruling on Ortega's custody petition. The Temples argued that in agreeing to the consent order, Ortega had entered into a voluntary contract releasing all of her parental power to a third person under OCGA § 19-7-1 (b)(1), and therefore the standard articulated in *Durden* should apply. The Temples asserted that Ortega did not retain any real rights to visitation in the consent order.

In response, Ortega argued that *Durden* did not apply, and instead the trial court should apply the standard articulated in *Lopez v. Olson*, 314 Ga. App. 533 (724 SE2d 837) (2012). According to Ortega, *Lopez* required that prior to the entry of the consent order, an evidentiary hearing should have been held, followed by a finding that the she was unfit. She also argued that the consent order was intended to be temporary, and that under the consent order, she had not fully released all of her parental rights, but retained visitation. The trial court orally ruled that the standard

---

[2] The trial court referenced an earlier hearing on the petition at which, according to the trial court, the parties "voiced the opinion that they wanted some time to see if they could talk and come to some sort of agreement about how things might move forward." The transcript of the hearing is not included with the record on appeal, but its inclusion is not necessary for the disposition of this case.

6

of *Durden*, not *Lopez*, applied, and subsequently entered the written legal standard order.

Regarding the legal standard it would apply in a final custody hearing, the trial court concluded that because *Durden* applied, the Temples now had the prima facie right to custody as against Ortega, who had lost the right to custody; and Ortega could regain custody upon showing by clear and convincing evidence that she was currently a fit parent and that it was in the child's best interest that custody be changed. The court reasoned that the consent order constituted clear and convincing evidence of a voluntary contract by Ortega, pursuant to OCGA § 19-7-1 (b) (1), fully releasing her parental rights to a third person, the Temples. The court explained that unlike the prior order at issue in *Lopez*, under which the biological parent retained some custody rights, here the consent order was a final order awarding sole permanent custody of the child to the Temples. The court explained that the fact that the consent order awarded Ortega visitation as agreed upon between her and the Temples did not mean she retained any parental rights. The court certified its ruling for immediate review.

The court also entered a temporary order which, among other things, granted Ortega supervised visitation every other weekend,[3] access to the child's school and

---

[3] The trial court directed that the grandmother supervise the visitations.

7

medical records, and the opportunity to offer suggestions regarding A. U.'s educational and medical care, with the stipulation that Ortega could not offer the providers any "directives." The order, however, gave the Temples sole decision making authority over the child, and provided that the consent order would "remain in full force and effect."[4]

1. Particularly in matters as sensitive and important as the custody of children, this Court should ensure that the trial court has applied the proper legal framework. *In the Interest of A. S.*, 293 Ga. App. 710, 713-714 (2) (667 SE2d 701) (2008) ("Where, as here, the trial judge acts as finder of fact, our duty is to make certain the proper standard was utilized by the court"). See also *Blackburn v. Blackburn*, 249 Ga. 689, 693 (2) (292 SE2d 821) (1982) ("[T]he appropriate burden of proof in a given type of case is shaped by the risk of error inherent in the truth-finding process.") (punctuation omitted.) Within this framework, this Court, as it must, consider that "[p]arents have a constitutional right under the United States and Georgia Constitutions to the care and custody of their children. This right to the custody and

---

[4] The order further directed Ortega to, among other things, have periodic drug and alcohol tests, attend individual and group counseling, abstain from alcohol and drug use, use a real-time testing device to test for alcohol when parenting A. U., and remain employed. All test results were to be reported to the Temples and the guardian ad litem.

control of one's child is a fiercely guarded right that should be infringed upon only under the most compelling circumstances." (Citations and punctuation omitted.) *Clark v. Wade*, 273 Ga. 587, 596-587 (IV) (544 SE2d 99) (2001). See *Troxel v. Granville*, 530 U. S. 57, 65 (II) (120 SCt 2054, 147 LE2d 49) (2000) ("The liberty interest at issue in this case — the interest of parents in the care, custody, and control of their children — is perhaps the oldest of the fundamental liberty interests recognized by this Court."); *Santosky v. Kramer*, 455 U.S. 745, 769 (IV) (102 SCt 1388, 71 LE2d 599) (1982) (consistent with the Due Process Clause of the Fourteenth Amendment, before a State may sever the rights of parents in their natural child, the state must support its allegations "by at least clear and convincing evidence"). Guided by this principle, we consider Ortega's claims on appeal.

2. On appeal, Ortega contends that the trial court erred in concluding that the *Durden* standard applies to the court's custody determination, and therefore concluding that the Temples have the prima facie right to custody pursuant to OCGA § 19-7-1. She asserts that the standard in *Lopez* should apply because the consent order did not constitute a permanent award of custody to the Temples, made after an evidentiary hearing with specific findings by clear and convincing evidence of

present parental unfitness. She further asserts that she did not release or lose all parental power under the consent order.

According to the Temples, Ortega permanently surrendered her parental rights in the consent order and the trial court properly concluded that the *Durden* standard applies. They argue that she permanently lost her parental rights under the provision of OCGA § 19-7-1 (b) (1) which holds that a parent may voluntarily contract with a third party to relinquish parental rights – which, they assert, Ortega did in the consent order. Thus, the Temples maintain, they have a prima facie right to custody of A. U. and the burden of proof shifts to Ortega for her to regain custody of the child.

"In a contest between a parent and a third party over the custody of a child, the first question to be determined is whether or not the parental control of the child has been lost by the parent. Unless such parental control has been lost, the parent has a prima facie right of custody." *Dornburg v. McKellar*, 204 Ga. 189, 189 (48 SE2d 820) (1948). See *In the Interest of M. F.*, 298 Ga. 138, 144-145 (780 SE2d 291) (2015) (noting that "the presumption that children ordinarily belong in the care and custody of their parents is not merely a presumption of the statutory and common law, but it has roots in the fundamental constitutional rights of parents"; that "persons faced with forced dissolution of their parental rights have a more critical need for

10

procedural protections than do those resisting state intervention into ongoing family affairs. When the State moves to destroy weakened familial bonds, it must provide the parents with fundamentally fair procedures"; and that, "if the law did not afford the now fit parent of a child . . . any opportunity at all to revisit the question of [custody] and thereby regain some or all of his parental power, it would raise serious constitutional questions.") (citations and punctuation omitted). This prima facie right to parental custody changes, however,

> [o]nce a third party has been awarded permanent custody of a child in a court proceeding to which a parent was a party[.] [In that context,] the roles of the parent and the third party reverse; that is, the third party now has the prima facie right to custody as against the parent who has lost the right to custody. The parent can regain custody upon showing by clear and convincing evidence his or her present fitness as a parent and that it is in the best interest of the child that custody be changed. *Durden*, 249 Ga. at 686 (2).

a. OCGA § 19-7-1 (b) (1) provides in part that "[p]arental power shall be lost by . . . [v]oluntary contract releasing the right to a third person." See *White v. Bryan*, 236 Ga. 349, 350 (223 SE2d 710) (1976) ("A parent may lose the right to custody only if one of the conditions specified in [OCGA § 19-7-1 (b)] is found to exist, or, in exceptional cases, if the parent is found to be unfit.") (citations omitted).

11

In its legal standard order, the trial court agreed with the Temples that the consent order between Ortega and the Temples equated to "clear and convincing evidence of a voluntary contract by [Ortega] releasing her parental rights to a third person, namely [the Temples]." The trial court also concluded that the order awarded permanent custody to the Temples and the fact that the parties agreed upon visitation did not make it less so.

To support a finding that a party permanently relinquished her parental rights pursuant to a voluntary contract under OCGA § 19-7-1 (b) (1), "the evidence must establish clear, definite, and unambiguous terms of such a contract." *Baskin v. Hale*, 337 Ga. App. 420, 423 (1) (787 SE2d 785) (2016). In assessing whether a voluntary contract was clear, definite and unambiguous, we determine whether there was an "indication that when entering the . . . consent order, the superior court decided that [the third party] would have a permanent ongoing custodial right in [the child and] that such a custodial arrangement was in the child's best interest." Id. See also *Clark v. Wade*, 273 Ga. 587, 590 (II) (544 SE2d 99) (2001) ("Under the parental rights standard, a third party could gain custody in a dispute with a parent only by proving by clear and convincing evidence that the parent had lost his or her parental power.

12

A parent could lose parental power in one of these ways: voluntary contract [and other ways not relevant here].").

In this case, Ortega did not permanently surrender her parental power or custody rights to A. U. in the consent order. There is no indication from the consent order that the trial court considered A. U.'s best interest, or that it determined that custody would be permanently granted to the Temples. The consent order reflects only that Ortega, the grandmother, and the Temples agreed to certain custodial terms related to A. U. The consent order, by its terms, purported to modify the January 20 custody order between Ortega and the grandmother to give the Temples "sole legal and physical custody" of A. U. The consent order also provided that Ortega and the Temples would agree upon visitation and it would not be "unreasonably withheld," and changed the recipient of the child support payments from the grandmother to the Temples. It is important to note that in the January 20 custody order, although the grandmother was given physical and legal custody of A. U., the order directed that the grandmother "consult and discuss any major decisions for [A. U.] with Ortega before making such decisions." Given this proviso, Ortega clearly retained significant parental rights in the earlier custody order. Nor did the trial court make any findings regarding the Ortega's fitness or the best interest of A. U. See *Clark*, 273 Ga. at

13

594-595 (III) ("Unlike the parental termination cases, third-party custody cases do not sever the relationship between parent and child. Instead, the parent retains significant rights, including the right to visitation and to obtain custody under changed circumstances."). See also *Baskin*, 337 Ga. App. at 423-424 (1) (no permanent custodial right where "there is no indication that when entering the 2007 consent order, the superior court decided that Hale would have a permanent ongoing custodial right in A. W. or that such a custodial arrangement was in the child's best interest. By entering into the consent order, Baskin simply agreed that Hale was entitled to joint custody of A. W., with liberal visitation, at that time. She did not bestow upon Hale permanent custodial or parental rights in A. W. Thus, the record does not support the trial court's conclusion that Baskin voluntarily relinquished her parental power pursuant to OCGA § 19-7-1 (b) (1)").

b. Moreover, the reversal of the presumption to a third party in *Durden* applies "only to a permanent award which was made properly upon an evidentiary hearing with specific findings" establishing parental unfitness by clear and convincing evidence. *Parton v. Haviland*, 212 Ga. App. 835, 837 (4) (5) (442 SE2d 806) (1994). See *Blackburn*, 249 at 692 ("where a third party sues the custodial parent to obtain custody of a child and to terminate the parent's custodial rights in the child, we have

14

required a *stricter* standard. In such a case, the parent is entitled to custody of the child unless the third party shows by 'clear and convincing evidence' that the parent is unfit or otherwise not entitled to custody.") (citation and emphasis omitted). There is no evidence, nor do the parties contend, that an evidentiary hearing was made prior to the entry of the consent order. Likewise, the consent order contains no findings whatsoever regarding Ortega's fitness, other than the court had deviated from child support guidelines because Ortega was "disabled." See *Morgan v. Morgan*, 349 Ga. App. 886, 888 (2) (827 SE2d 73) (2019) (explaining that "[t]he *Durden* standard[,] under which the roles of the parent and the third party reverse, applies where there has been a permanent award of custody to the third party made pursuant to an evidentiary hearing with specific findings by clear and convincing evidence of present parental unfitness.") (punctuation omitted.)

Thus, given the absence of a permanent custody award which was entered upon an evidentiary hearing establishing Ortega's unfitness by clear and convincing evidence, we do not agree with the trial court that the consent order established "clear, definite, and unambiguous terms" of such a voluntary contract between Ortega and the Temples pursuant to OCGA § 19-7-1 (b) (1) such that Ortega had permanently relinquished all parental rights to A. U.

15

Accordingly, as there was no prior permanent custody award to the Temples, the trial court erred in holding that the legal standard in *Durden* would apply to the final custody determination, and as such the burden of proof does not shift to Ortega. See *Durden*, 249 Ga. at 686 (2). See also *Lopez*, 314 Ga. App. at 539-540 (3) (decided under the rebuttable presumption standard in favor of the parent as set forth in OCGA § 19-7-1 (b.1),[5] involving a custody dispute between the children's

---

[5] OCGA § 19-7-1 (b.1) provides:

Notwithstanding subsections (a) and (b) of this Code section or any other law to the contrary, in any action involving the custody of a child between the parents or either parent and a third party limited to grandparent, great-grandparent, aunt, uncle, great aunt, great uncle, sibling, or adoptive parent, parental power may be lost by the parent, parents, or any other person if the court hearing the issue of custody, in the exercise of its sound discretion and taking into consideration all the circumstances of the case, determines that an award of custody to such third party is for the best interest of the child or children and will best promote their welfare and happiness. There shall be a rebuttable presumption that is in the best interest of the child or children for custody to be awarded to the parent or parents of such child or children, but this presumption may be overcome by a showing that an award of custody to such third party is in the best interest of the child or children. The sole issue for determination in any such case shall be what is in the best interest of the child or children.

16

biological mother and grandparents, in which we concluded that mother had not lost all parental powers in prior custody order and that "[t]he *Durden* standard applies where there has been a *permanent* award of custody to the third party made pursuant to an evidentiary hearing with specific findings by clear and convincing evidence of present parental unfitness. Even assuming the [prior] court order could be construed on its face as awarding permanent custody of the children to the [grandparents], there was no evidentiary hearing and no finding by the court that [the mother] was an unfit parent, nor does it appear that such a finding was waived by the parties while represented by counsel.") (citation and punctuation omitted; emphasis supplied).

Thus, we reverse the trial court's legal standard order with direction that the prima facie right to parental custody has not shifted to the Temples, but remains with Ortega, as the mother.

3. Because it is unclear whether the trial court used the appropriate legal standard in the temporary order, as amended, which the trial court entered pursuant to Ortega's petition, we vacate that order, and remand the case to the trial court for further proceedings not inconsistent with this opinion.

17

*Judgment reversed in part, vacated in part, and case remanded with direction.*

*Gobeil and Pipkin, JJ., concur.*