**SECOND DIVISION**
**MILLER, P. J.,**
**HODGES and PIPKIN, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

*DEADLINES ARE NO LONGER TOLLED IN THIS COURT. ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.*

**April 22, 2021**

# In the Court of Appeals of Georgia

A21A0648. WALLACE v. CHANDLER et al.

PIPKIN, Judge.

Following the grant of her application for discretionary review, Lensey Wallace ("the Mother") appeals from the trial court's order denying her motion to set aside an order granting custody of her minor child to appellees Stephanie Chandler and George Chandler ("the Chandlers"). Because we agree with the Mother that the Chandlers lacked standing and that the trial court's custody order was void, we now reverse.

The scant record does not reveal a full picture of the attendant facts and circumstances, and we must glean what we do know from the custody petition, motion to set aside, the trial court's orders, and the undisputed facts stated in the parties' briefs on appeal. The minor child was born in 2016 and had been placed in

the Chandlers' care pursuant to an order of the Catoosa County Juvenile Court in a pending dependency action. The Chandlers filed their custody petition in the Superior Court of Catoosa County on May 5, 2017. The petition named the Mother, the biological father, and the maternal grandmother as respondents, and the petition noted that the Mother was currently incarcerated. The petition stated that the minor child was "deprived" and sought removal of the minor child from the custody of her biological parents, with sole custody vested in the Chandlers. The petition also recited that awarding custody to the Chandlers was in the best interest of the child.

The Mother, who remained incarcerated, did not file a response to the petition,[1] and, on August 1, 2017, following a hearing at which only the Chandlers and their attorney appeared, the trial court entered a "Final Order of Custody/Parenting Plan." The court found by clear and convincing evidence that placing custody of the minor child in the exclusive care of the Chandlers, who were described as the child's

---

[1] The child's biological father acknowledged service but also did not file a response to the petition.

"fictive kin," was in the child's best interest.[2] The court also ruled that any visitation between the biological parents and the child would be in the exclusive discretion of the Chandlers, and if the parties could not agree on visitation times or places, the biological parents could pay for supervised visitation sessions. Further, the trial court ordered the Mother and the biological father to pay child support.

On April 2, 2020, the Mother filed a motion to set aside the final order of custody pursuant to OCGA § 9-11-60, raising three main arguments: 1) the Chandlers lacked standing, citing OCGA § 19-7-1 (b.1); 2) the superior court lacked subject matter over the petition for custody, and, accordingly, the final order was void on its face and void ab initio; and 3) the Chandlers' petition was more in line with a dependency petition and thus within the exclusive jurisdiction of the juvenile court pursuant to OCGA § 15-11-10 (1) (C).[3] Following a hearing,[4] the trial court

___

[2] The trial court also made a number of other findings, including that the parents continued to have a substance abuse problem and had failed to cooperate with the Department of Family and Children Services with regard to a reunification plan with the child. The order also noted that the child had been in the care of the Chandlers for an extensive period and was thriving in their care.

[3] In her brief in support of her motion, the Mother asserted the additional ground that the trial court applied an improper standard in making its custody determination.

[4] The hearing transcript has not been provided as part of the record on appeal.

summarily concluded that the custody order was voidable, not void, and denied the motion to set aside. The mother filed her application for discretionary appeal, which we granted, and this appeal timely followed.

Under OCGA § 9-11-60 (d), a judgment may be set aside based on, among other things, "[l]ack of jurisdiction over the person or subject matter," or "[a] nonamendable defect which appears upon the face of the record or pleadings." Id. "We review a ruling on a motion to set aside for abuse of discretion and affirm if there is any evidence to support it." *Vasile v. Addo*, 341 Ga. App 236, 240 (2) (800 SE2d 1) (2017). With respect to questions of law, however, we employ a "de novo standard of review, meaning that we owe no deference to the trial court's ruling and apply the plain legal error standard of review." (Punctuation omitted.) Id.

As we do in most cases that concern parental rights, we start with the recognition that a parent has "a constitutional right under the United States and Georgia Constitutions to the care and custody of their children" and that this "is a fiercely guarded right that should be infringed upon only under the most compelling circumstances." (Citation and punctuation omitted.) *Clark v. Wade*, 273 Ga. 587, 596 (IV) (544 SE2d 99) (2001) (plurality opinion). This right is guarded in our law in a number of ways, including a constitutionally based presumption that works in favor

of preserving parental custody and a statutory scheme that has been enacted by the glegislature to protect this right while balancing the need to protect the welfare of the child. See *Jewell v. McGinnis*, 346 Ga. App. 733, 736 (1) (816 SE2d 683) (2018); see also *Fyffe v. Cain*, 353 Ga. App. 130, 130 (1) (836 SE2d 602) (2019) (physical precedent only); *Mashburn v. Mashburn*, 353 Ga. App. 31, 41-42 (1) (836 SE2d 131) (2019).

In general, third parties have no right to seek custody of a child whose parents have not lost custody by one of the means established in OCGA § 19-7-1 or OCGA § 19-7-4 or have not been deemed unfit. *Villenueve v. Richbourg* 217 Ga. App. 354, 354 (1) (457 SE2d 821) (1995); *Brooks v. Carson*, 194 Ga. App. 365, 367 (2) (390 SE2d 859) (1990) (physical precedent only), overruled on other grounds by *Mayor & Alderman of City of Savannah v. Norman J. Bass Constr. Co.*, 264 Ga. 16 (44 SE2d 63) (1994). There is no indication that any of these circumstances apply here, and "[n]othing in [final order of custody] amounted to an adjudication that, through one of the ways recognized in OCGA §§ 19-7-1 and 19-7-4, or through unfitness [the Mother] had lost [her] right to custody." *Oni v. Oni*, 351 Ga. App. 400, 406 (1), n.11 (830 SE2d 775) (2019).

However, in 1996, our General Assembly amended OCGA § 19-7-1 to provide a means whereby certain specified third parties can petition for custody even in those circumstances where the parents may not have lost their right to custody through the other provisions of that Code section "or any other law . . . ." See OCGA § 19-7-1 (b.1); Ga. L. 1996, p. 412, § 1. The Mother argues that OCGA § 19-7-1 (b.1) is limited to the third-party relatives specified in that code section, and does not grant the Chandlers, as non-relatives, standing to file a custody petition against a parent. The Chandlers urge a different interpretation of the statute, arguing that OCGA § 19-7-1 (b.1) merely governs custody disputes between parents and certain specified third-party relatives, but does not limit or "prevent third party non-relatives from having the ability to obtain custody of a child." However, as our Supreme Court has held, "OCGA § 19-7-1 (b.1) expressly limits third parties who may seek custody to a specific list of the child's closest relatives, including an adoptive parent." *Clark v. Wade*, 273 Ga. 587, 597 (IV) (544 SE2d 99) (2001). Further, numerous other cases from our appellate courts have made it plain that "OCGA § 19-7-1 (b.1) . . . specifically limits the class of third parties who may petition for custody to grandparent, great-grandparent, aunt, uncle, great aunt, great uncle, sibling, or adoptive parent." (Punctuation omitted.) *Brock v. Brown*, 354 Ga. App. 63, 63-64 (1)

6

(840 SE2d 155) (2020) (holding that a temporary co-guardian without biological ties to the minor child lacked standing to petition the superior court for permanent custody). See *Walls v. Walls*, 278 Ga. 206, 207, n.3 (599 SE2d 173) (2004) (under OCGA § 19-7-1 (b.1), third parties to whom a court may grant custody of a minor child "are limited to grandparent, great-grandparent, aunt, uncle, great aunt, great uncle, sibling, or adoptive parent"); *Baskin v. Hale*, 337 Ga. App. 420, 423 (1) (787 SE2d 785) (2016) (although former boyfriend had shared parenting duties with mother, lived in the home and helped raise the minor child, he had no basis for obtaining custody under OCGA § 19-7-1 (b.1) when he was neither an adoptive parent nor one of the relatives listed in that code section.); *In the interest of C. L.*, 284 Ga. App. 674, 675 (1) (644 SE2d 530) (2007) (once the biological father legitimated the child, mother's husband to whom she was married when she gave birth to the child was no longer considered the legal father of the child and thus he "was not one of the limited number of related third parties who may seek custody from a legal parent"). Accordingly, the Chandlers did not have standing under OCGA § 19-7-1 (b.1).

The Chandlers also point to the superior court's "inherent authority," citing *White v. Bryan*, 236 Ga. 349 (223 SE2d 710) (1976), *Howell v. Gossett*, 234 Ga. 145

(214 SE2d 882) (1975), and *Chapin v. Cummings*, 191 Ga. 408 (12 SE2d 312) (1940), for the proposition that "[t]he Appellate Courts have long held that a third-party non-relative has standing to bring an action for custody." However, those cases, which pre-date the enactment of OCGA § 19-7-1 (b.1), involve habeas corpus proceedings *initiated by* the child's biological father to regain custody from the child's step-father, not the other way around.[5] More importantly, none of those cases specifically address the standing of a non-relative to initiate custody proceedings against a biological or legal parent. "Issues merely lurking in the record, neither brought to the court's attention nor expressly ruled upon, have not been decided so as to constitute precedent." (Citation and punctuation omitted). *Yim v. Carr*, 349 Ga. App. 892, 897 (2) (827 SE2d 685) (2019). Thus, these cases do not demonstrate that the Chandlers had standing to bring the custody petition in this case.

As the Mother points out, the Chandlers were not without redress. First, they could have filed a dependency petition under OCGA § 15-11-150,[6] and the Chandlers

---

[5] In all three cases, the mother had been awarded custody of the child following the biological parents' divorce. The mother subsequently remarried and then later died, leaving the child at least temporarily in the custody of the step-father.

[6] In relevant part, that code section states that "any person who has actual knowledge of the abuse, neglect, or abandonment of a child . . . [is authorized to file] a petition alleging dependency[.]"

8

now argue in their brief on appeal that they in fact made an assertion of dependency in their petition. However, what they fail to point out is that the juvenile court has "exclusive original jurisdiction" over all such petitions, see OCGA § 15-11-10 (1) (C), depriving the superior court of subject matter jurisdiction even if they had asserted such a claim.[7] Further, effective July 2019, the Georgia General Assembly enacted a statute specifically granting standing to "equitable caregivers" to seek custody of a minor child without "disestablish[ing]" the parentage of the child. See OCGA § 19-7-3.1 (b) (4), (g) & (j). While that statute was not in effect at the time the Chandlers first filed their petition, it does provide another avenue for a non-relative to obtain custody of a child in their care.

Accordingly, we agree with the Mother that, under the circumstances of this case insofar as they are apparent from the record before us, it does not appear that the Chandlers, as third party non-relatives, had standing to initiate these proceedings in superior court seeking custody of the minor child who had been placed by another court, at least temporarily, in their custody. As our Supreme Court has explained,

---

[7] In fact, it appears that there were ongoing proceedings in the juvenile court concerning the minor child and that the Chandlers were awarded temporary custody of the child as part of those proceedings; the record does not explain why the Chandlers initiated these separate proceedings in the superior court.

9

"The constitutional and procedural concept of 'standing' falls under the broad rubric of 'jurisdiction' in the general sense, and . . . a plaintiff with standing is a prerequisite for the existence of subject matter jurisdiction." *Blackmon v. Tenet Healthsystem Spalding, Inc.,* 284 Ga. 369, 371 (667 SE2d 348) (2008). "A judgment rendered by a court without jurisdiction of the subject matter is absolutely void." *Williams v. Fuller*, 244 Ga. 846, 848 (2) (262 SE2d 135) (1979). See also OCGA § 9-12-16 ("The judgment of a court having no jurisdiction of the person or the subject matter or which is void for any other cause is a mere nullity and may be so held in any court when it becomes material to the interest of the parties to consider it.") Accordingly, the superior court lacked jurisdiction to enter the custody order at issue and should have set aside that order as void. The order denying the Mother's motion to set aside must be reversed.

*Judgment reversed. Miller, P. J., and Hodges, J., concur*.

10